## Centers et al. v. Jones et al.

(Decided November 17, 1931.)

A. J. OLIVER for appellants.

F. R. GOAD and N. G. GOAD for appellees.

Opinion of the Court by Judge Clay—Affirming.

On January 16, 1930, Mrs. Ollie Durham, a resident of Allen county, died, leaving a will by which she devised all of her property after the payment of her debts, funeral expenses, etc., to Poley Centers and his wife, Ida Centers. After it was probated, the will was contested by Everett Jones and others, who were the nephews and nieces of the testatrix, on the ground of mental incapacity and undue influence, and on the further ground that the will, being undated, was not drawn in conformity with the statute. The jury found against the will, and the contestees have appealed.

The record discloses that the testatrix was the widow of A. M. Durham, and lived with him for about 10 years prior to his death. When but a small boy Poley Centers was taken into his home by A. M. Durham and reared by him. When A. M. Durham died, he left the testatrix $1,000, and the remainder of his property to Poley Centers and two other children whom he had raised. There was a contest over the will of A. M. Durham, but the jury decided in favor of the will. Mr. Durham's personal estate amounted to about $12,000. Mrs. Durham renounced the will, but subsequently entered into a compromise with the beneficiaries by which she was given $2,000 in addition to the $1,000 bequeathed her in the will. It further appears that Poley Centers and his wife were kind to her, and that he attended to her business. On the 16th of August, 1929, she came to town in company with Poley Centers and his wife. After attending to some business at the bank, she and Mrs. Centers went to the office of A. J. Oliver. Mrs. Durham told Mr. Oliver that she wanted him to draw her will. According to him her mind was clear, and she told him exactly what she wanted done with her property. He then dictated the will to his stenographer, and, after it was typewritten, read it more than once to Mrs. Durham. C. A. Gilliam, cashier of the Farmers' National Bank, was sent for. On his arrival, Mr. Oliver made Mrs. Durham's mark to the will, and he and Gilliam signed as witnesses, in the presence of each other and Mrs. Durham. Mr. Gilliam testified that before he signed Mr. Oliver asked Mrs. Durham if that was her will, and she said it was. George H. Newman, who was present at the time, testified that he heard Mrs. Durham tell Mr. Oliver what she wanted put in the will. Mr. Oliver then wrote the will

and read it to her. It was suggested that he might serve as one of the witnesses, but Mrs. Durham objected, and wanted some one from the Farmers' National Bank. Mr. Gilliam then came, and he saw both Mr. Gilliam and Mr. Oliver sign their names as witnesses.

On behalf of the contestants, a number of witnesses gave it as their opinion that Mrs. Durham was mentally incapable of making a will. In some instances, the facts on which these opinions were based were not such as to show mental incapacity, and, that being true, the opinions were of no probative value. Wigginton's Ex'r v. Wigginton, 194 Ky. 385, 239 S. W. 455. However, it was shown by other witnesses, who expressed the same opinion, that the testatrix was incapable of recognizing her own relatives; that she could not count money, and did not know a nickel from a dime, or a quarter from a half dollar; that she did not know the difference between a half mile and two miles and a half. In addition to this evidence, Dr. Meredith, who treated the testatrix on September 9, 1929, and attended her for several days thereafter, testified that at the time she did not have sufficient mental capacity to make a will. It is true that his opinion was based on her mental condition three or four weeks after the will was alleged to have been executed, and that in the meantime her arm had been fractured, but these facts were hardly sufficient to take away the probative effect of his opinion. Though a number of witnesses, who were more or less closely associated with the testatrix, and had an opportunity to observe her conduct and mental operations, expressed the opinion that she was mentally capable of making a will, we are constrained to the view that the evidence of mental incapacity was sufficient not only to take the case to the jury, but to sustain the verdict.

On the question of undue influence, we have the fact that contestee Poley Centers was attending to Mrs. Durham's business, that he and his wife brought her to town the day the will was written, and she then told the cashier of the bank not to honor any checks unless signed by Centers; that she then left with Mrs. Centers, and went to the office of the attorney where the will was drawn; that Centers stated to Mrs. O'Neal that he brought testatrix to town to make her will, and stated that she was just like a child and could be persuaded to do anything, and the further fact that, although the testatrix on the renunciation of her husband's will

was entitled to about $6,000, Centers made with her a compromise by which she received $3,000. For these reasons we also conclude that the evidence of undue influence was sufficient to take the case to the jury and sustain the verdict.

But the point is made that the court erred in admitting evidence of the value of A. M. Durham's estate, and of Mrs. Durham's renunciation of his will, and the subsequent compromise. It is argued that the only purpose of this evidence was to prejudice the minds of the jury by showing that Centers was the beneficiary under both wills. One of two things is certain. Either the testatrix who received by the compromise only $3,000, when she was entitled to about $6,000, was incapable of knowing and appreciating her rights, or the settlement was the result of undue influence, and, in order that the jury might understand the effect of the settlement, it was necessary to show the amount of A. M. Durham's estate. As the evidence in question showed that Centers obtained a settlement that was manifestly unfair, there can be no doubt that it was admissible on the question of undue influence.

On the whole, we perceive no error in the record prejudicial to the rights of appellant.

Judgment affirmed.

Whole court sitting.